FRANCIS H. WEEKS, PLAINTIFF AND APPELLEE, v. THEODORE SMITH & SONS COMPANY, DEFENDANT AND APPELLANT.

Submitted December 3, 1909—Decided March 3, 1910.

1. A broker whose authority to sell is limited as to price, is nevertheless entitled to his commission if his agency is exclusive, and if while it is in force the owner sells at a reduced price to a customer introduced by him.

2. In such case the commission will usually be the agreed percentage of the amount actually realized.

3. Defendants employed plaintiff, a ship broker, to sell a steamboat for $9,500, promising him five per cent. commission in case of such sale. Plaintiff introduced a buyer who subsequently bought the steamboat at a lower price through another broker. Plaintiff claimed to be ignorant that another broker was to be employed. *Held*, in error, that a judgment for plaintiff for five per cent. of the amount realized by the sale was justified by the evidence; and that the questions whether plaintiff had a right to believe his agency exclusive, and whether he was the moving cause of the sale, were properly for the jury.

On appeal from the District Court.

Before Justices SWAYZE, TRENCHARD and PARKER.

For the appellant, *John Griffin* and *John F. Gough*.

For the appellee, *Edward Le Clerc Vogt, Jr.*

The opinion of the court was delivered by

PARKER, J. Plaintiff sued in the District Court for commissions as a ship broker in the sale of a steamboat. The case was tried with a jury, and resulted in a verdict for plaintiff for the full amount of his claim, five per cent. on $8,600, the price received by defendants, who accepted a bid made through another broker, and paid him a commission. The defendants now appeal.

There was evidence to show that about January 8th, 1908, plaintiff had a conversation in New York City with Charles H. Smith, an officer of defendant corporation, whose agency for defendant is not disputed, and learned that the boat was for sale at the price previously paid by defendant at a marshal's sale; that plaintiff was authorized to make sale of the boat, and furnished by defendant with particulars as to draft and other details; that the regular rate of commission in plaintiff's business was five per cent. The exhibits show that a considerable correspondence took place between the parties, beginning with a letter from plaintiff advising them, as was the fact, that he had approached a Mr. Avery C.

Smith, who, as he knew, was in the market, with a view to a sale. Defendants raised their price, and on January 13th wrote plaintiff that their price was $10,000 net; that they would sell "to the first one that comes around with the cash and gives us the best price, and will bind ourselves to no one, even though we do make a price on her." Plaintiff, however, continued his negotiations with A. C. Smith, and while they were in progress another broker named Archer approached defendants, apparently in behalf of other purchasers whom he named. Finally on February 15th defendants wrote to plaintiff: "We write in reference to your client Mr. Avery C. Smith * * * and would state that if you can sell him the boat for $9,500 we will allow you 5 per cent. commission off this." On the same day they wrote Archer "we are anxious to get rid of this vessel and if you can make sale of her within an early reasonable time, we will accept $9,500 and allow you 5 per cent. therefrom." Plaintiff admitted on cross-examination that he knew defendants were trying to sell the boat but denied that he was aware they had employed another broker for the purpose, and testified that by the custom of his trade he "had a monopoly of this particular customer." The other broker, Archer, notwithstanding plaintiff's "monopoly," got into communication with A. C. Smith, and through his efforts A. C. Smith made, and defendants accepted, an offer of $8,600; defendants allowed and paid Archer $200 for commissions, and the sale was consummated. Plaintiff claimed that he was entitled to commission as the moving cause of the sale; motions to nonsuit and to direct a verdict were denied, and the case was submitted to the jury with the result already stated.

The specification of causes for reversal challenges the refusal of the court to nonsuit, its refusal to direct a verdict for defendants, certain passages in the charge, and rulings on the evidence.

The nonsuit was asked on two grounds—first, that plaintiff had knowledge that he was not the only broker employed to effect a sale and consequently could not recover if some one in competition with him succeeded in consummating the bargain. The legal rule invoked was correctly stated (*Vreeland*

v. *Vetterlein,* 4 *Vroom* 247), but was inapplicable at this stage of the case, because it by no means conclusively appeared that plaintiff had any such knowledge as was assumed by counsel. In fact the evidence was rather the other way, for plaintiff expressly denied that he knew or had been told that other brokers were in the field. He did know that defendants were trying to sell the boat; but this did not indicate that they were trying to sell through other brokers. At best, his knowledge that other brokers were employed was a jury question. Hence a nonsuit on this ground would have been improper.

The second ground of nonsuit was that it was incumbent on plaintiff to show that he secured Avery C. Smith through his efforts as a purchaser, and that plaintiff had not shown this. The motion for direction of a verdict seems to have been put on the same ground in effect, "that where several brokers are employed to secure a sale * * * and one broker names a possible prospective purchaser, he must show before he is entitled to recovery, that he actually brought that purchaser with his offer to the seller." This is not the law. As was stated in *Vreeland* v. *Vetterlein, supra,* when several brokers are openly employed, only the one that actually produces the purchaser is entitled to the commission. But it was not an established fact at the close of the plaintiff's case or at the close of the whole case, that the employment of the other broker was an open one, *i. e.,* that plaintiff was informed of or charged with knowledge of it. So that the reason urged for a direction, and secondly advanced in applying for a nonsuit, was also untenable.

It is claimed also that the court erred in charging:

"An agent employed to sell real estate who first brings it to the notice of the person who ultimately becomes its purchaser, is entitled to his commissions on its sale, nor can the owner avoid the liability by the selling of the property when a reduction is made through another broker."

And "where the principal sells at a less sum than that for which the broker was authorized to sell, the latter is entitled to a commission on the amount realized."

We think that these two propositions as applied to the case were substantially correct. The application of the first to real estate was of course irrelevant, but is not complained of. The specific criticism is that the court should have restricted the broker's right to recover to the production of a prospective buyer ready and willing with his offer according to the particular terms of the broker's employment. This was not presented in the form of a request to charge; but in any case it was not necessary in view of the evidence. On the plaintiff's theory of the case his employment was an exclusive one; he introduced the buyer, and a negotiation resulting in a purchase, to use the words of former decisions in this state, ensued on that foundation. It is settled that in such case the owner and buyer cannot by any arrangement between them, disappoint the claim of the broker for commission. *Vreeland* v. *Vetterlein, supra; Somers* v. *Wescoat,* 37 *Vroom* 551. The question is whether the broker was the efficient cause of the sale. *Hudson Real Estate Co.* v. *Bauer,* 64 *Atl. Rep.* 954. And if the owner, by direct negotiation with the purchaser, or even through another broker, consummates a sale to a purchaser introduced by the first broker on terms other than those dictated to the first broker, while the latter is still employed, the owner is liable to him for commissions. *Crowley Co.* v. *Myers,* 40 *Vroom* 245; 19 *Cyc.* 249; 44 *L. R. A.* 612 *et seq.* This, we think, disposes of the defendant's claim that plaintiff had not secured a purchaser pursuant to the terms of his employment, *i. e.,* for the sum of $9,500, and therefore came under the rule laid down in *Hinds* v. *Henry,* 7 *Vroom* 328, and *Runyon* v. *Wilkinson,* 28 *Id.* 421. The answer to this is (on the theory of plaintiff's exclusive employment) that peradventure plaintiff, if let alone, would have negotiated the sale at $9,500, either to A. C. Smith or to some other purchaser, and was deprived of the opportunity of doing so by defendants effecting a sale through another broker without plaintiff's knowledge of their intention to do so.

The charge was undoubtedly faulty in failing to confine the instructions excepted to within the limits of an exclusive

agency; but this point does not seem to have been called to the court's attention, and moreover the court went further than necessary in this regard by instructing the jury that plaintiff was not entitled to recover unless they found that there had been collusion between defendant and Archer to defraud plaintiff and deprive him of his commission. This was too favorable to defendant; it implied all that the court ought to have said on the subject of exclusive agency and more; and defendant therefore has no right to complain of that omission.

The other causes for reversal that are relied on challenge rulings on evidence. The court refused, on motion, to strike out the oral conversations leading up to the letter of February 15th, as tending to vary the terms of a written instrument. Conceding for the sake of argument that this is so, and that the oral employment was broader than the written one of February 15th, the result was the same, whether the contract was oral or written, because on the theory of exclusive agency we have already seen that a recovery was permissible under the written contract.

The court refused to admit in evidence a letter from Archer to defendants dated January 10th, to show the absence of collusion. We cannot see that this letter was relevant to that issue or any other issue in the case. Subsequent letters from Archer which were admitted, show clearly that the customer he then had in mind was a corporation in Virginia and had nothing to do with A. C. Smith. The fact that Archer, *bona fide,* represented this corporation has no bearing on the question of his subsequent transactions relating to plaintiff's customer, Smith.

The judgment will be affirmed.