### C. J. OBEN *v.* PAUL DUCHARME.

February Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, SUPR. J.

Opinion filed May 6, 1919.

*Real Estate Broker—Compensation—Contract for Sale of Farm —Construction—Performance of Contract by Broker— Right to Commission—Producing Customer—Sale by Owner.*

By a written contract the defendant placed his farm exclusively in the

plaintiff's hands for disposal at the price and upon the terms stated therein, and agreed, if the same was sold, exchanged or bargained for, by either party, to pay the plaintiff three per cent. of the amount of the sale. This contract was revoked in accordance with provisions therein for such purpose. Later, the defendant refusing to let the plaintiff have the exclusive sale, orally contracted with him that if he would sell the farm for the price and upon the terms named in the former written contract defendant would pay him his commission of three per cent. *Held*, that the words "upon the terms named" in the oral contract had reference to the price specified in the former written contract, and not to the commission.

To entitle the plaintiff to a commission under the parol contract it was necessary for him to introduce a person who was ready, willing, and able to buy the farm at the price and upon the terms prescribed by the defendant, unless the defendant ratified plaintiff's unauthorized act in producing a customer tendering a counter proposition.

The terms prescribed by the defendant fixed a certain price for the farm to be paid in money, part down and the rest in yearly payments. *Plaintiff told defendant, not that the prospective customer introduced by him would buy the farm at that price and on those terms, but that he had certain property which he wanted to trade for a farm.* *Held*, that this was not introducing a customer who was ready, willing, and able to accept the terms prescribed by the defendant.

The defendant declined to trade his farm for other property, and no terms of a trade or exchange were talked about. Later, the defendant, in good faith, exchanged properties with such customer on terms not mentioned when plaintiff introduced them. Plaintiff had no part in effecting the exchange, or knowledge of the same until after it was completed. *Held*, that plaintiff was not the "procuring cause" of the transaction, and was not entitled to the commission.

ACTION OF BOOK ACCOUNT to recover commission for sale of defendant's farm. Plea, the general issue. Trial by Court at the March Term, 1918, Orleans County, *Slack*, J., presiding. Judgment for the defendant. The plaintiff excepted.

*W. W. Reirden* and *Walter H. Cleary* for the plaintiff.

*Frank D. Thompson* for the defendant.

STATEMENT BY WATSON, C. J.   In the fall of 1915 the defendant, desiring to sell his farm, situated in the town of Irasburg, on the 27th day of September placed the same in the hands of the plaintiff, a real estate broker at Newport, for that purpose, entering into a written contract which is made a part of the findings of fact.

By that contract the plaintiff agreed to list and use his best endeavors to sell the property, it being placed exclusively in his hands for disposal at the price and upon the terms stated therein, and the defendant agreed if the same is sold, exchanged or bargained for, either by the defendant or plaintiff, prior to the receipt of notice by the latter from the former, of the withdrawal of the property, or within six months thereafter, to pay the plaintiff three per cent. of the amount of the sale, with a further provision in that connection not material here.

On November 10, 1916, the plaintiff having failed to find a customer for the property, the same was withdrawn from his agency by the defendant and the contract revoked under and in accordance with provisions therein for such purpose.

In March, 1917, the defendant requested the plaintiff to renew his efforts to sell the farm.   Suggestion being made by the plaintiff that there should be a new contract, the defendant refused to sign a new contract, and refused to let the plaintiff have the exclusive sale, but told him, in substance, that if he would sell the farm for the price and upon the terms named in the former written contract the defendant would pay him his commission of three per cent.   This proposal was accepted by the plaintiff and constituted the contract under which he thereafter operated.

In the summer of 1917 the plaintiff took a Mr. Fountaine who was then a resident of Derry, N. H., to see defendant's farm, and told defendant that he had brought a party who wanted to buy a farm.   Defendant answered that if the party would pay him his price he would sell.   Plaintiff later, but same day, told defendant that Fountaine had a couple of houses and a grocery store which he wanted to trade for a farm, but nothing was said about his having a stock of groceries that was likely to enter into the trade.   Defendant answered, in substance, that his farm was not to be had in a trade at the price named, and that he did not want to trade his farm for other property.   Defendant told Fountaine his price for the farm was $18,000, but

would not take that price and exchange it for other property; and Fountaine told defendant what he asked for his real estate. Nothing further was said about an exchange of properties at that time, and no terms of a trade or exchange were talked about. A short time thereafter defendant notified one of plaintiff's men that the plaintiff better find him another customer, as he was not going to trade with Fountaine, and in that connection said he did not want to bother with that other property. Fountaine was not then, nor was he ever, ready and willing to buy the defendant's farm for the price and on the terms set forth in the written contract between the plaintiff and the defendant. The defendant did not at that time contemplate trading with Fountaine, and did not say or do anything to lead either the plaintiff or Fountaine to think that he did.

Later, about the middle of August, the plaintiff found another customer, to whom defendant sold his farm for $16,750, provided the customer could come out of Canada; but this trade was never consummated because the Canadian immigrant officials would not allow him to cross the border.

Some time after the trade last named fell through, defendant had occasion to go to Concord and Manchester, N. H., and on that occasion went to Derry which is about twelve miles from Manchester, saw Fountaine, and made a slight examination of his property. Later, Fountaine went to Irasburg and looked over defendant's farm. Still later, defendant again went to Derry and made a more thorough examination of the Fountaine property. On September 8, 1917, Fountaine went to Irasburg, the terms for the exchange of properties were finally agreed upon between him and defendant, and the trade was consummated. In this trade defendant's farm was valued at $18,750. In exchange he got the Fountaine real estate valued at $7,500, a stock of groceries valued at $1,300, Fountaine assumed an outstanding mortgage of $6,000 on defendant's farm, and paid the balance in cash.

The plaintiff had no part in making or arranging the terms of this exchange; in fact he had no knowledge of the negotiations until after the trade was closed. He telephoned to the defendant once after he was at defendant's farm with Fountaine and before the negotiations were had with the customer from Canada, and asked defendant if he was going to look over the Fountaine

property, in answer to which he was told by defendant that he was not.

About a week after plaintiff and Fountaine were at defendant's farm, plaintiff wrote Fountaine that he and the defendant were coming down to see his property; but the court states that they do not find that defendant at that time had given the plaintiff any information to that effect. The findings state that this is all the plaintiff ever did in the way of effecting an exchange of defendant's property.

WATSON, C. J. Counsel disagree as to what the parol agreement found and stated by the trial court in fact was: On the part of the plaintiff it is said that of the words "for the price and upon the terms named in the former written contract," the words "upon the terms" have reference to the commission which was to be paid if the property "is sold, exchanged or bargained for either" by the plaintiff or by defendant; while on the part of defendant it is urged that those words, used as they are in connection with the price specified, have reference to the payment of such purchase price.

On the inside of the paper containing the written contract is a "description of the property listed for sale and referred to in attached contract." The last paragraph is: "Price:— * * *; lowest price of real estate including personal property, $18,000; terms, amount down $3,000. How much per year, $500 and int. at 6%, will take some good security." A printed blank was used. The dollar-mark, the figures, and all here quoted after figures showing the sum to be paid per year, are written in the blank spaces, with pen and ink. In the heading of the contract, is shown the number of acres in the farm to be sold, and the price. The first paragraph states that the above and within described property is placed exclusively in the hands of the plaintiff "for disposal at the price and upon the terms herein stated, also at any price and upon any terms hereafter agreed to by me (defendant) in writing."

It will be noticed that the property was not thereby placed in the plaintiff's hands "upon the terms" stated; but it was placed in his hands "for disposal * * * upon the terms" stated. No one would contend that the words "at the price" have reference to anything other than the sum for which the farm was to be sold; and yet, coupled with those words and co-ordinated with

them in the same expression, are the words "and upon the terms," showing that they are used in the same sense, that is, have reference to the sale to be made. "The coupling of words together," says Mr. Broom, "shows that they are to be understood in the same sense." Broom's Leg. Max. 588. This interpretation is shown to be correct by the phrase immediately following as a part of the same sentence: "also at any price and upon any terms hereafter agreed to by me (defendant) in writing." For otherwise this phrase has the effect of giving the defendant the sole power of changing the provisions of the written contract, touching a matter in which the plaintiff, as well as defendant, was interested, and to change which required the agreement of both.

In the written acceptance of defendant's proposition by the plaintiff (which is below defendant's signature), the plaintiff engages "to use our best endeavors to sell or exchange said property in accordance with the terms above stated."

The word "terms" is not used in any other place, either in connection with the description of the property, or in the contract attached thereto. When it is observed that in every instance this word plainly has reference to the sale of the property, and not to the commission, there should seem to be no uncertainty regarding its intended meaning as used in the subsequent parol agreement wherein the same form of expression is adopted, referring to the former written contract. It is a rule of construction that a clause referred to must be understood as incorporated with that referring to it. *Lippett* v. *Kelley,* 46 Vt. 516; *Chapman* v. *Longworth,* 71 Vt. 228, 44 Atl. 352.

The parol contract under which the parties thereafter operated then was, that if the plaintiff would sell the farm for the price of $18,000, payable $3,000 down, and $500 a year with interest at six per cent., taking some good security, the defendant would pay him a commission of three per cent.

The plaintiff was instrumental in producing Fountaine as a customer for defendant's farm, by way of exchanging for it real estate situated in another state; but it is found that Fountaine was not then, nor was he ever, ready and willing to buy the farm for the price and upon the terms set forth in the written contract between the plaintiff and defendant. This negatives the plaintiff's right to a commission (unless the record shows a ratification by defendant of plaintiff's unauthorized act in producing a

customer tendering a counter proposition, a question presently discussed), for to entitle him to a commission under the parol contract it devolved on him to introduce a person who was ready, willing, and able to buy the farm at the price and upon the terms prescribed by the owner. *Reynolds-McGinness Co.* v. *Green,* 78 Vt. 28, 61 Atl. 556.

The terms prescribed fixed a certain price to be paid in money, part down, and the rest in yearly payments and interest, with good security. The plaintiff told defendant, not that Fountaine would buy the farm at that price and on those terms, but that he had two houses and a grocery store which he wanted to trade for a farm. This was not introducing a customer who was ready, willing, and able to accept the terms prescribed by the owner. *Schultz* v. *Griffin,* 121 N. Y. 294, 24 N. E. 480, 18 Am. St. Rep. 25; *Cadigan* v. *Crabtree,* 179 Mass. 474, 61 N. E. 37, 88 Am. St. Rep. 397, 55 L. R. A. 77; *Darrow* v. *Harlow,* 21 Wis. 302, 94 Am. Dec. 541; *Gelatt* v. *Ridge,* 117 Mo. 553, 23 S. W. 882, 38 Am. St. Rep. 683. At most it was but a counter offer to enter upon negotiations looking to an exchange of defendant's farm for certain real estate owned by the would-be customer, an offer materially at variance with the proposition to sell, made by defendant. Yet the latter was at liberty to accept or to reject the terms of the counter offer. At that time he rejected them, telling plaintiff that he did not want to trade his farm for other property, and no terms of a trade or exchange were talked about. A short time thereafter defendant notified one of plaintiff's men that plaintiff better find him another customer as he was not going to trade with Fountaine, and plaintiff telephonically asked defendant if he was going to look over the Fountaine property, and was told by defendant that he was not. Later, about the middle of August, the plaintiff found another customer, a Canadian, to whom defendant sold his farm, contingent upon the customer's being able to come out of Canada; but he was not allowed so to do, and that trade was never consummated. Some weeks later in the circumstances and on the terms related in the statement of the case, defendant and Fountaine effected an exchange of properties, defendant receiving, in part, personal property valued at $1,300, not mentioned by the plaintiff when introducing Fountaine as a customer. With the making or arranging of the terms of this exchange, the plaintiff had no part, indeed, he had no knowledge of the negotiations until after the trade was closed.

There is no finding of bad faith on the part of defendant. The question then is, whether the plaintiff was the ''procuring cause'' of the transaction, a fact essential to be affirmatively established in order to entitle him to recover the agreed commission. *Hoadley* v. *Savings Bank,* 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 321; *Duncan* v. *Kearney,* 72 Conn. 589, 45 Atl. 358; *Woods* v. *Lowe,* 207 Mass. 1, 92 N. E. 772; *Lockhart* v. *Hamlin,* 190 N. Y. 132, 82 N. E. 1094; *Walker* v. *Baldwin,* 106 Md. 619, 68 Atl. 25; *Weeks* v. *Smith & Sons Co.,* 79 N. J. Law, 388, 75 Atl. 773; *Kifer* v. *Yoder,* 198 Pa. St. 308, 47 Atl. 973; 4 R. C. L. 313, § 52.

The record does not show this fact found either expressly or impliedly, and it is not inferentially established by the judgment, for that was in favor of the defendant.

*Judgment affirmed.*