CECELIA STICKLING, Executrix, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

No. 41652.

APRIL 4, 1933.

J. G. Gamble, R. L. Read, and A..B. Howland, for appellant.

Ralph Howard and S. J. Sayers, and B. O. Clark, for appellee.

STEVENS, J.—This is the second time this case has been before this court. For a more detailed statement of the record than that which follows herein see our former opinion, Stickling v. C., R. I. & P. Ry. Co., 212 Iowa 149, 232 N. W. 677.

The loss for which damages are sought to be recovered resulted from a fire which on the afternoon of May 31, 1925, destroyed the barn, some live stock, grain, and other personal property on a farm owned by George Friel located a short distance south of Grand Junction. The fire originated on the top of a load of straw standing close to the barn on the south side thereof. When first seen, the blaze was limited to a small area but, due to a strong wind blowing from the southeast, the buildings were soon enveloped in flames. .The afternoon was hot and for some time the season had been very dry. A very high wind, described by the witnesses as one of the strongest they had ever seen, was blowing from the southeast. The residence on the premises, from near which the fire was discovered, was some distance west of the barn. The flames were discovered within two or three minutes after a heavily loaded southbound freight train of appellant had passed. The owner of the land saw the train pass and testified that it was working hard and that the engine was throwing off great quantities of heavy black smoke. The right of way of appellant extends substantially due north and south with a slight bearing to the southeast and at the point closest to the load of straw was 777 feet due east. The evidence will be stated in somewhat greater detail a little later in this opinion.

Two propositions, (a) that the evidence was insufficient to sustain the verdict, and (b) error alleged in certain of the court's instructions to the jury, are relied upon for reversal. The argument of counsel proceeds upon the hypothesis, as stated by them, that "there is no proof that (1) a spark or ember was, ever had been, or could be transported by the wind for the required distance under like conditions, or (2) could or would retain sufficient vitality to

set anything on fire after having been transported the required distance."

One of appellant's witnesses testified that "measured in a due southeasterly direction from the place the load of straw had been to the point at the center of where the line south 45 degrees east would cut the center of the track" was 1,324 feet. The evidence relied upon by appellee at this point is wholly circumstantial. The theory of counsel that there is a total absence of proof of essential collateral facts to justify an inference that a fire originated from a spark or burning ember thrown out by appellant's locomotive rather narrowly limits the scope and probative value of facts duly proven. The exact direction of the wind is more or less uncertain. The distance above stated was ascertained by an engineer and rests upon a scientific basis. The term "southeast" as commonly and ordinarily employed and understood, is subject to considerable variation. The distance stated is, no doubt, accurate, but it will not do to interpret the testimony with strict regard thereto. According to the testimony, the wind was somewhat variable. It is conceded that, upon the former trial in the district court, much testimony was introduced for the purpose of showing that the wind, in fact, was blowing from the southwest. A family by the name of Howard resided on the farm adjoining Friel's on the north. The improvements on the respective tracts were about one-half mile apart. Some of the witnesses who testified in this case were at the Howard home when the Friel fire was discovered. Testimony of these and other witnesses tended to show that the train in question was a long, heavy one; that the engine was working hard and throwing out a large quantity of heavy black smoke; that it was moving slowly up grade and making an unusual noise; that, according to one witness, chunks approximating the size of walnuts were thrown out and carried in the neighborhood of 1,000 feet; that a fire was discovered and extinguished by Mrs. Howard in a straw pile a short distance from the windmill on their premises; that this fire was discovered very shortly after the train passed and when the fire at the Friel place was first observed by the Howards. A witness residing thirty rods from appellant's right of way, who lived a mile north of Friel's place, testified that the smoke from the engine passed over his house and fully corroborated the testimony of the other witnesses that the engine was chugging, puffing, working hard, and throwing a great cloud of heavy, black smoke.

Concerning the distance that sparks and burning embers have been observed to be carried from locomotives, the witnesses testified, in substance, as follows: Friel testified that he had on three or four occasions seen fire set from an engine all the way from forty to sixty rods. The witness Delp testified that he had observed burning embers carried thirty rods, and G. E. Stevens, a locomotive engineer for over thirty years of the Chicago & North-Western Railway Company, testified that he had seen a fire set from a spark 600 feet and that upon one occasion, under unusual circumstances, when a very strong wind was blowing, he saw lighted embers carried by the wind from an Union Pacific locomotive approximately a quarter of a mile.

To sustain the hypothesis of appellant, this court must find, as a matter of law, that a jury would not be justified in drawing the inference from the facts and circumstances such as were shown in this case that a spark or burning ember can be carried by the wind a distance of 1,324 feet.

The finding and conclusion of the jury does not necessarily, as we conceive the rule to be, result from basing one presumption upon another. As stated by the Missouri Court of Appeals in Hardwick v. Wabash R. Co., 181 Mo. App. 156, 168 S. W. 328, 330:

"Reasonable inferences drawn from affirmative facts proven are evidence, and not presumptions built upon other presumptions."

Before the court may interfere with the verdict of a jury upon the ground urged, the facts and circumstances must be considered and interpreted with due regard to the well established right of the jury to view the evidence in the light most favorable to the plaintiff. The respective fires on the Howard and Friel premises followed each other in close succession and were discovered almost immediately after the train referred to had passed. This is a circumstance to be given weight. Hemmi v. C. G. W. Ry. Co., 102 Iowa 25, 70 N. W. 746. There was no person in the vicinity of the pile of straw on the Howard place nor near the load of straw adjacent to Friel's barn. Barring the possibility that both fires originated from sparks or burning embers thrown off by appellant's engine, the origin thereof is equally without explanation. This is not, of course, of serious importance. If the fire on the Howard place originated from a spark or some substance thrown off by appellant's engine, upon the hypothesis of counsel, it must have

been carried 1,000 feet. As already stated, Friel testified that he had seen a fire set from sparks sixty rods, or a trifle under 1,000 feet from an engine. Of course, if there was direct and positive testimony that fires have been known to be set from sparks or embers thrown by a locomotive a distance of 1,324 feet, the inference of the jury might rest upon an established fact. The question would, under the remaining facts proven, then be substantially free from doubt. It will not do to say that the jury was bound to find that the spark or ember must have traveled the distance stated. The wind was variable and a spark or ember, if any, which set the fire may have been thrown off some distance north of the point assumed in making the measurement shown above. Southeasterly from a strictly scientific point of view and southeasterly as commonly understood and interpreted are by no means necessarily identical. It is true that sparks and burning embers thrown off by locomotives under ordinary circumstances soon die and fall to the ground. It seems to us that the jury was fairly warranted from all the facts and circumstances disclosed in the record in finding, even in the absence of direct or positive proof of the collateral fact specified by counsel, that the fire originated from the engine of appellant. To hold otherwise would be to too narrowly circumscribe the scope and value of circumstantial evidence.

None of the cases cited by appellant are in conflict with this view, as a careful reading thereof will disclose. Commonwealth v. Webster, 5 Cush. (Mass.) 295, 52 Am. Dec. 711; O'Connor v. Railway, 129 Iowa 636, 106 N. W. 161; Thayer v. Smoky Hollow Coal Co., 129 Iowa 550, 105 N. W. 1024; Manning v. Ins. Co., 100 U. S. 693, 25 L. Ed. 761; Atchison, etc., R. Co. v. De Sedillo (C. C. A.) 219 F. 686; Cyc. Vol. 16, p. 1050, section 2, note 8; U. S. v Ross, 92 U. S. 281, 23 L. Ed. 707; Smith v. Pa. R. Co. (C. C. A.) 239 F. 103; People v. Roy, 206 Ill. App. 406; Dowell v. State, 181 Ind. 68, 101 N. E. 815; Hardwick v. Wabash Ry. Co., supra.

II. The court instructed the jury that if it found that the fire was set by one of appellant's engines, then it would be presumed that appellant was negligent and that, in order to avoid liability, it had the burden of overcoming such presumption "by negativing every fact that would justify a finding of negligence on defendant's part." In a subsequent instruction, the jury was told, in substance, that if it appeared by a preponderance of the evidence that the engine in question was equipped with a standard and ap-

proved appliance for preventing the escape of fire and that it was in good repair and that the engine was being carefully and properly handled by competent employees "and that in all other respects the defendant was free from negligence, as negligence is defined in these instructions, you will find for the defendant, even though you may find that the fire in question was set out by the defendant's engine as claimed by the plaintiff." In a still later instruction, the burden of "negativing every fact which would justify a finding of negligence on its part was placed upon appellant."

The exceptions preserved are to the quoted portions of these instructions. Whether technically accurate or not, we think it clear that the jury could not have been in any way misled thereby. The burden, in the first instance, placed upon appellant was clearly and succinctly stated. The only fact or circumstance to be negatived was that appellant had failed to properly equip and operate its engine. The vital inquiry was the origin of the fire. Assuming that appellee made out a *prima facie* case, the burden of negativing the presumption of negligence rested upon appellant. This burden was fully met by proof of the matters required by law to be observed. The instructions could not have been fairly or reasonably otherwise interpreted by the jury.

Finding no reversible error in the record, the judgment is affirmed.—Affirmed.

KINDIG, C. J., and ANDERSON, KINTZINGER, and MITCHELL, JJ., concur.