WALLIS L. FAIRBANKS *v.* JOHN FRANK AND TRUSTEES.

October Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed January 2, 1935.

*James Brownlee* for the defendant and trustees.

*Laurence F. Edgerton* for the plaintiff.

POWERS, C. J. ██ ██ The plaintiff, a licensed real estate broker doing business at Springfield, Vt., sues the defendant for a commission which he claims on the sale of the General Lewis Farm, so-called. The suit was returnable to and tried by the Windsor municipal court, which found the facts and rendered judgment thereon for the plaintiff. The court also adjudged the trustees were liable for the amount of the judgment. The defendant and the trustees excepted. The findings show that defendant listed his farm with the plaintiff for sale. The price of the property as fixed by the defendant was to be $9,000. Soon after, the plaintiff talked with George D. Nelson about the farm and tried to interest him in buying it. Some time before this, the plaintiff had had the sale of this farm from a previous owner, and at that time, he took Nelson over it and tried to sell it to him. During the month of June, the plaintiff talked with Nelson two or three times about the farm in an attempt to sell it to him. During the summer of 1933, and before the place was deeded to Nelson as hereinafter stated, the plaintiff told the defendant that Nelson was his customer and if the farm was sold to him, he, the plaintiff, would expect a commission on the sale. To this the defendant agreed. As a result of the plaintiff's efforts, but after negotiations between the defendant and Nelson, the farm was deeded to Nelson and his wife on September 7, 1933. The court also found that George Nelson and Lua Nelson, who were summoned as trustees, owed the defendant the sum of $1,400 and rendered judgment for the plaintiff and against the trustees, for $450 and costs of $16.31. Subject to exception, the plaintiff was allowed to show that he had taken Nelson over the farm under a former employment, as above stated. It is quite apparent that this evidence had no tendency to prove that the plaintiff showed the farm to Nelson while act-

ing for the defendant. But it was admissible to explain why the plaintiff did not show it to him after the defendant listed it with him. So the evidence was logically relevant. That a fact is remote, either in point of time or probative value, does not of itself preclude its admissibility. The doctrine of *Dalpe* v. *Bissette,* 99 Vt. 179, 182, 130 Atl. 591, the very case on which the defendant relies, is broad enough to justify the admission of the evidence under discussion.

■■ There was no error in connection with the questioning of the trustee in regard to his understanding relative to the $1,500 which, under their trade for the farm, the defendant was to have from the Nelsons. The course of the trial below, so far as the disclosure of the trustees was concerned, was informal. Nelson orally disclosed that they owed the defendant nothing, and he submitted himself to examination. Any reasonable probing into the arrangement between himself and wife and the defendant was allowable. The exact nature of trustee process is somewhat difficult to define. Some say that it is a mere form of attachment. This Court said that in *Baxter* v. *Vincent,* 6 Vt. 614, 620; but under the statute as it now stands, it must be more than that. Others say that it is, in effect, an action by the plaintiff against the trustee. Still others say that it is equivalent to a suit by the defendant against the trustee for the benefit of the plaintiff. But however it should be defined or classified, it is apparent that between the plaintiff and the trustee it is adversary in character, and closely approximates an action by the former against the latter. Therefore, when the trustee was under examination regarding the contract with the defendant, he was not the plaintiff's witness, but his own witness. It makes no difference who actually called him to the stand. He tendered himself for examination under oath, regarding his liability as trustee, and could be cross-examined on that subject by either the plaintiff or the defendant.

■ It appeared in evidence, that when the farm was deeded to the Nelsons, the defendant gave them a bill of sale of the hay and other crops then on the place, the avails of which were to be used to pay the taxes and insurance on the property. Subject to exception, the plaintiff was allowed to ask Nelson if there was any possibility that the avails of these crops would not go for the bills referred to. He replied that there was no such

possibility. So, if there was any error here, the answer rendered it harmless.

■ The defendant briefs several exceptions to the findings on the ground that they are unsupported by evidence. The real fault found with these is, in effect, that the inferences drawn by the court from the testimony given by the plaintiff are unwarranted. Thus, the plaintiff testified that he talked with Nelson about the farm and said this: "I told him that the place was for sale again and that a man down below owned it, had a deed of it, and it was placed in my hands to sell, and he had been interested before and I thought probably he would be again." The finding is that at this interview the plaintiff told Nelson "that he had the farm for sale, and tried to interest him in buying the place."

Again, the plaintiff was asked: "Had you talked with him (Nelson) more than once this summer?" And he answered, "Yes, I had two or three talks with him." The finding is that "the plaintiff talked with Mr. Nelson two or three times in an endeavor to sell the farm to him."

It is quite apparent that these findings go further than the literal statement of the witness. But this does not necessarily condemn them. If, when taken with the context and having in mind the subject-matter under investigation and the object to be attained, the inferences are fairly warranted, they must stand. A trial court is not bound down to the literal statements of a witness. It may draw therefrom such inferences of fact, even though they cover the facts essential to a recovery or defense, as are reasonably warranted thereby. *Rogers* v. *Cole,* 99 Vt. 239, 241, 131 Atl. 12; *Donis* v. *Sawyer Service, Inc.,* 143 Or. 433, 21 Pac. (2nd) 776; *Latham* v. *Hankey,* 117 Conn. 5, 10, 166 Atl. 400; *Stickling* v. *Chicago, R. I. & P. Ry. Co.,* 215 Iowa, 1312, 247 N. W. 642, 644; *Hornick* v. *Bethlehem Mines Corp.,* 307 Penn. 264, 161 Atl. 75; *Perry* v. *Johnson Fruit Co.,* 123 Neb. 558, 243 N. W. 655. While the testimony might have been more specific and definite, we cannot say that, as matter of law, the full findings were unwarranted.

■ The defendant says that the plaintiff was not entitled to recover anything because he did not procure a customer for the farm at the price named by the defendant, and likens the case to *Oben* v. *Ducharme,* 93 Vt. 211, 106 Atl. 777. But the contract involved in that case was quite different from the one in-

■

volved here. There the contract restricted the authority of the broker to the price fixed. Here the contract did not. This contract was, in effect, like the one in *Rogers* v. *Cole, supra*. Indeed the plaintiff makes a stronger case than that, because it is found that, while the contract was in force, the defendant promised to pay the plaintiff's commission, if he, the defendant, sold the farm to Nelson.

■ As we have seen the price of the property as fixed by the defendant was $9,000, to which the plaintiff's commission of five per cent. was to be added. The court below ruled that the plaintiff was entitled to his commission on the price fixed by the defendant, and rendered judgment therefor. The defendant excepted, and cites *Rogers* v. *Cole*, 99 Vt. 239, 131 Atl. 12, in support of his exception. While it is true that in that case the recovery was based upon the amount for which the property was sold rather than upon the original price named by the owner, the question here raised was not there presented. But we think the law is with the defendant on the point raised, and that *Rogers* v. *Cole* was decided with the true rule in mind. In the absence of a special engagement on the part of the broker like the one in *Oben* v. *Ducharme, supra*, he has earned his commission when he has produced a customer who buys the property at a price acceptable to the owner, unless the latter has in some legal way, prior to the sale, terminated the contract with the broker. In such cases, the commission is ordinarily to be computed on the sale price rather than the price first fixed. *Weeks* v. *Smith & Sons Co.*, 79 N. J. Law, 388, 75 Atl. 773, 774; *Gulf Trading Co.* v. *Radcliff*, 216 Ala. 645, 114 So. 308, 316; 43 A. L. R. 1122. If the property is not sold for cash or its equivalent, the commission should be figured on the fair value of the property. See *Godefroy* v. *Hupp*, 93 Wash. 371, Ann. Cas. 1918E, 494, 497.

These facts are not found. Nor are the facts found showing the basis of the judgment against the trustees. So the case will have to go back that these omissions may be supplied.

*Judgment as to defendant's liability affirmed, but as to the amount of damages and as to the liability of the trustees, it is reversed, and cause remanded. Neither plaintiff nor defendant to recover costs in this Court, but the trustees to recover costs here.*