## Byron Kelly v. Alphonse Beaudoin and Antoinette Beaudoin

[298 A.2d 831]

No. 93-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 5, 1972

Motion for Reargument Denied January 4, 1973

*James W. Wright, Esq.,* Woodstock, for Plaintiff.

*Monte & Monte,* Barre, for Defendants.

**Daley, J.** This is an appeal from a judgment for the plaintiff, a real estate broker, for a commission on the sale of the defendants' farm. The judgment was entered following a trial by court in the District Court of Vermont, Unit No. 6, Windsor Circuit.

The facts found by the court which the parties do not contest are as follows: In October, 1968, the plaintiff, a real estate broker, was contacted by Russell Dimick, the son-in-law of Mr. and Mrs. John Collier of Granville, Massachusetts. Mr. Dimick told the plaintiff that the Colliers were interested in purchasing a farm in Vermont. The plaintiff then spoke with the Colliers by telephone. Subsequently, the plaintiff contacted the defendants and learned that they were interested in selling their farm.

The plaintiff then contacted the Colliers and told them of the defendants' farm. He arranged to meet them at Mr. Dimick's farm on October 13, 1968, and from there go and view the defendants' farm. The Colliers did view the farm and meet the defendants. They also inspected the buildings, equipment, stock and land and went over the farm finances. At that time, the Colliers told the plaintiff that they had real estate that they owned in Massachusetts up for sale.

The Colliers then proceeded to apply for financing to enable them to purchase the defendants' farm. They applied to the Farmers Home Administration and Production Credit. However, both applications were rejected on November 6, 1968, and November 12, 1968, respectively. The plaintiff then notified the defendants of the rejections of these applications.

On or about November 22, 1968, without notifying the plaintiff or the Colliers, the defendants entered into an exclusive listing agreement with another real estate broker, Hyman Garnick.

On March 18, 1969, the Colliers sold their Massachusetts property. They then resumed their search for a Vermont farm. During the course of this search, they contacted Mr. Garnick through his advertisement in the *New England Homestead*. Mr. Garnick showed the Colliers several farms, one of which being the defendants' farm. The Colliers agreed to a sale price of $72,000, and on April 7, 1969, gave the defendants a $1,000 deposit for the purchase of the farm.

On June 3, 1969, the defendants conveyed their farm to the Colliers. The Colliers paid the defendants $10,000 cash and gave a mortgage to the defendants for $62,000. The plaintiff subsequently brought suit for his commission.

 The defendants argue on appeal that they never agreed to pay a commission, and if they did, any contract existing between the plaintiff and the defendants had been terminated. The court properly found upon conflicting testimony that there did exist an agreement between the plaintiff and the defendants to find a purchaser for the farm at a net price of $75,000 and to pay a commission of $2,500 to the plaintiff to be added on to the purchase price. Conflict in testimony is for the trier of fact to determine and his finding on such evidence will not be disturbed on appeal. *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 16, 220 A.2d 480 (1966).

 The defendants also maintain that since any agreement existing was not in writing, it violated a rule of the Vermont Real Estate Board. However, the rule that the defendants point out was dated December 21, 1967. The Vermont Real Estate Board had no power to promulgate rules until July 1, 1969, when the legislature provided the Board with rule-making power in No. 283 of the Public Acts of 1969 (Adj. Sess.) § 13. 26 V.S.A. § 2254. Without legislative authority the Board possessed no rule-making power, and, as such, this rule was without force and effect. See generally *Taconic Racing & Breeding Association, Inc.* v. *Vermont Department of Public Safety*, 130 Vt. 388, 296 A.2d 257 (1972).

 The defendants also maintain that the oral agreement violated the statute of frauds. However, this agreement was not for the sale of land, but for the procuring of a purchaser for land, and as such did not fall within the strictures of the statute of frauds. 12 V.S.A. § 181(5).

 As to the contention of the defendants that the agreement was terminated, the court found, upon supporting evidence, that there was no revocation of the brokerage relationship between the plaintiff and the defendants. The plaintiff argued and the court found that the defendants were liable to pay the plaintiff a commission since he provided a customer who bought the land where the broker relationship was not validly or legally terminated. *Andrews* v. *Newton*, 118 Vt. 290, 294, 108 A.2d 517 (1954). However, in *Andrews*

v. *Newton, supra,* there was but one broker engaged in procuring a purchaser, and in the present case, there was a second broker involved. When a broker enters into a nonexclusive listing agreement, as the evidence shows that the plaintiff did in this case, he implicitly accepts competition from other brokers and the seller himself. *Giroux* v. *Lussier,* 126 Vt. 555, 561, 238 A.2d 63 (1968).

But much more significant is the absence of a finding of fact by the court that the plaintiff was the procuring cause of the eventual sale of the defendants' farm to the Colliers. In *Andrews* v. *Newton, supra,* 118 Vt. at 293, there was a specific finding of fact that the broker was the procuring cause of the sale in question. Such fact must be affirmatively established in order to entitle the broker to establish a commission. *Dindo* v. *Cappelletti,* 116 Vt. 403, 405, 77 A.2d 840 (1951); *Home Real Estate Agency* v. *Nadeau,* 96 Vt. 167, 169, 118 A. 523 (1922) ; *Oben* v. *Ducharme,* 93 Vt. 211, 218, 106 A. 777 (1919).

The plaintiff alleged in his complaint that he procured the eventual buyer of the farm. This the defendants denied in their answer, placing the question of procuring cause of this transaction in issue. During the course of the proceedings, Mr. Garnick was called as a witness by the defendants, and they attempted to question him as to the part he played in the transaction from the time he became involved with the Colliers and the defendants until it was finally closed. Counsel for the defendants offered this testimony to show the plaintiff was not the procuring agent. The court sustained plaintiff's objections to the introduction of this testimony. The state of the evidence at the time of this objection did show that the plaintiff did first interest the Colliers in buying the defendants' farm, but the possibility of sale was foreclosed by the rejection of the Colliers' applications for financing. A conflict in testimony arose as to whether these rejections were temporary until the Colliers' financial situation changed. However, contrary to the finding of the court that the plaintiff attempted to again resume negotiations after learning in late March that the Colliers had sold their Massachusetts property, the uncontradicted testimony of the plaintiff himself clearly shows that he did not learn of such sale until May,

1969, and only contacted the defendants after the $1,000 deposit had been paid to the defendants by the Colliers on April 7, 1969.

Not only did the court err on excluding the testimony of Mr. Garnick material to the question of procuring cause, but also erred on failing to make the essential finding whether the plaintiff was the procuring cause of the sale of the defendants' farm to the Colliers.

In *Walbridge Agency, Inc.* v. *Rutland Hospital,* 123 Vt. 149, 186 A.2d 179 (1962), the question of procuring cause was determined by the jury. The judgment was affirmed on the basis that there was evidence upon which the jury could determine, as it did, that the plaintiff broker was the procuring cause of the transaction. *Id.* 123 Vt. at 153. The dissenting opinion of former Chief Justice Holden commends itself to us in this case because here there is no determination of procuring cause, and the dissent provides a clear standard to determine this issue in these circumstances:

> ". . . [T]he assumption that the broker first interested [the purchaser] in buying the property is not enough to constitute the procuring cause of the sale. [Citations omitted]. Although the broker's efforts need not be the sole cause of the sale, it is essential that they dominate the transaction and amount to something more than an incidental or contributing influence. If it were otherwise, every broker who has any concern with the property might earn separate commissions on a single sale." 123 Vt. at 154–55.

The court in this cause found that the defendants interfered in bad faith with the plaintiff's efforts to sell the property. But this finding of bad faith was predicated on the fact that the defendants exclusively listed their farm with Mr. Garnick, thus interfering with the plaintiff's efforts in selling the farm.

Justice Holden continued in *Walbridge Agency, Inc.* v. *Rutland Hospital, supra,* 123 Vt. at 155:

> "The mere listing of property with one broker or conferring upon him the right to sell does not deprive the

owner of the privilege of accomplishing a sale of the property through his own efforts, or those of another broker. [Citations omitted]. He will be liable only when he has interfered in bad faith with the broker's efforts. [Citations omitted]. On the facts submitted there is no evidence of bad faith and the presumption is against it."

See also *Giroux* v. *Lussier*, 126 Vt. 555, 561, 238 A.2d 63 (1968).

The listing of the property with another broker by the defendants in the face of a non-exclusive listing agreement with the plaintiff is permissible in light of *Walbridge Agency, Inc.* v. *Rutland Hospital, supra,* and *Giroux* v. *Lussier, supra.* No other evidence appearing in the record to rebut the presumption against bad faith, the finding of bad faith is not supported and cannot stand. *Montgomery* v. *Branon,* 127 Vt. 83, 87, 238 A.2d 650 (1968).

Since there is no finding that the plaintiff was the procuring cause of the transaction here, and the finding that the defendants interfered with the broker's efforts in bad faith cannot stand, there appears no basis in the findings of fact by the court upon which the judgment for the plaintiff's commission can stand. Therefore, the judgment, unsupported by the findings must be vacated, *Montgomery* v. *Branon, supra,* 127 Vt. at 91, the entry is:

*Judgment reversed and cause remanded.*