## Ellis-Gould Corporation v. Byron K. Kelly

[356 A.2d 497]

No. 146-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed April 6, 1976

*Garfield H. Miller* of *Black and Plante,* White River Junction, for Plaintiff.

*Curtis L. Bourdon,* Woodstock, for Defendant.

**Larrow, J.** Tried by court, this action resulted in a judgment below for the plaintiff for the claimed amount of a real estate commission. The facts involved are unusual only in that all of the people involved are professionals. The plaintiff is a licensed real estate brokerage, the defendant seller a licensed real estate broker, and the buyer a licensed broker in New York and an experienced real estate developer. Protection of an unwary public is not an element of this action.

The trial court made able and extensive findings, fully supported by the evidence. Defendant's claims of error are, in substance, directed to the conclusions drawn by the court from its findings. The defendant argues in the classic phraseology that plaintiff was not the procuring and efficient cause of the sale involved because it did not initiate the buyer's interest, abandoned the buyer as a customer, and did not disclose all material facts within its knowledge to the seller; he also argues that he did not interfere in bad faith with the plaintiff's efforts to sell. Plaintiff argues that the substance of the whole case is an attempt to evade payment of an earned commission. We concur, as did the trial court, with plaintiff's view.

In early 1973 the defendant Kelly conferred with Bruce Gould, one of plaintiff's officers and stockholders, about defendant's property in West Woodstock, Vermont. On June 1, defendant listed the property, by written nonexclusive agreement, with plaintiff for a period of twelve months. The listing price was $60,000 or other price acceptable to defendant; the commission was to be 6%. Other brokers were given a similar listing. Plaintiff showed the property to several persons, and advertised it for sale.

About June 15, one Gurman, a licensed real estate broker and developer from New York, contacted plaintiff about an apartment rental, and later discussed with Gould the availability of local property for commercial or multiple dwelling development. Gould showed him a map and pointed out several parcels. Gurman desired to view these at his convenience; in doing so he observed a sale sign on defendant's subject property, entitled "Woodstock Realty" and placed there by defendant. He went onto the premises and met the defendant, but they did not discuss sale or purchase. Gurman then went to plaintiff's office and inquired about the Kelly property, learning that plaintiff had the listing.

Gurman inquired of Gould about water, school access, sewage problems, and zoning regulations. Gould put him in touch with the plaintiff's attorney on these problems, and several conferences with Gould and the attorney relating to zoning and financing ensued. Gould proposed that Gurman submit an offer, but Gurman wanted a definite resolution of the zoning problems. The defendant was told by plaintiff of

Gurman's interest and the discussions that were taking place. The last such meeting was August 1, 1973.

On August 3, Gould went on vacation. Thereupon his salesman, one Bebo, got a phone call from a co-broker that an offer for the Kelly property was to be signed the next morning, and asking him to be present. Bebo complied, and returned with a signed deposit receipt and sales agreement for part of the property, on terms different from the listing. He notified defendant promptly, and defendant the same day picked up the offer for consideration. Later that same day, Gurman stopped into plaintiff's office, learned Gould was on vacation, picked up some papers from the attorney, and was told about the offer and deposit. He complained that he had not been contacted, became upset and left. He promptly arranged a meeting with defendant, when he told him about his dealings with Gould. On August 6 he told the attorney he was going to deal with Kelly directly, and the attorney withdrew from the matter because of possible conflict. On August 14, Gurman secured new counsel and entered into a sales agreement with Kelly for $60,000. Conveyance followed on November 1, with $10,000 paid in cash and a purchase money mortgage for $50,000.

It is, of course, axiomatic that plaintiff must show more than incidental relationship to the resulting sale. That it was the procuring cause must be shown, as this same defendant was advised in *Kelly* v. *Beaudoin,* 131 Vt. 27, 298 A.2d 831 (1973). The trial court, upon the evidence, properly concluded that plaintiff had met this burden, as was its function. *Walbridge Agency* v. *Rutland Hospital,* 123 Vt. 149, 186 A.2d 179 (1962). Upon the evidence, we conclude that the trial court's finding of procuring cause was not only not "clearly erroneous" under V.R.C.P. 52(a), but that it was clearly correct. From the facts, it is quite apparent that the plaintiff's efforts "dominated the transaction," with resultant procuring causation. *Kelly* v. *Beaudoin, supra.*

Defendant's claim of "abandonment" fares no better. The termination of further endeavor outlined in *Strout* v. *Wooster,* 118 Vt. 66, 99 A.2d 689 (1953), does not here appear. Plaintiff's negotiations with the eventual purchaser were continuous and ongoing; their termination was through

no act of the plaintiff. Communication of another offer to the owner was its legal duty. *Strout* v. *Wooster, supra.* It had also, under the findings, kept defendant Kelly advised of its negotiations with Gurman. We are pointed to no case holding a duty to disclose to Gurman the other offer plaintiff had submitted, but in any event, he was advised of that offer the day it was received. This information, indeed, seems to have been the straw which prompted the submission of his own offer. Defendant's claim that there was a "substitution of primary customers" is not sustained by either the findings or the evidence. Plaintiff kept defendant advised of Gurman's interest and activity. This was even more than it was bound to do, absent a concrete offer from him. *Blitz* v. *Breen,* 132 Vt. 455, 460, 321 A.2d 48 (1974). However "upset" Gurman may have become, there was nothing in plaintiff's conduct to justify either his frame of mind or the subsequent efforts of himself and the defendant to avoid the payment of plaintiff's commission.

Defendant's final argument is that he is not liable for a commission because he did not interfere, in bad faith, with the plaintiff's efforts to sell the property. Apart from the fact that the findings below do not support this contention, he misapprehends the application of the bad faith doctrine. Where the broker is the procuring cause of the transaction, he is entitled to a commission even though the transaction is consummated directly by the principal. *Rogers & Cole* v. *Cole,* 99 Vt. 239, 131 A. 12 (1925). It is where consummation of the transaction is prevented by acts of the principal that the presence or absence of bad faith becomes material. Cf. 12 Am.Jur.2d *Brokers* § 167, at 907 et seq. Here, the sale procured by the plaintiff was actually closed, and it is entitled to the agreed commission.

*Judgment affirmed.*