### State of Vermont v. Heritage Realty of Vermont and Fenton-Ryan Realty

[407 A.2d 509]

No. 49-79

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed September 13, 1979

*M. Jerome Diamond,* Attorney General, and *Jay I. Ashman* and *Glenn A. Jarrett,* Assistant Attorneys General, Montpelier, for Plaintiff.

*Robinson E. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Heritage.

*Harry R. Ryan, III*, of *Ryan Smith & Carbine, Ltd.*, for Fenton-Ryan.

Daley, J. This action was brought, on June 15, 1978, against the Rutland County Board of Realtors (Board) and twenty-seven real estate brokers alleging that the defendants fixed prices, in violation of 9 V.S.A. § 2453(a) of the Consumer Fraud Act. It sought an injunction, restitution, penalties and costs. Only defendants Heritage Realty of Vermont (Heritage) and Fenton-Ryan Realty (Fenton-Ryan) appeared and answered. The remaining defendants stipulated to judgment against them. On September 5, the State filed interrogatories and requests for production. Heritage and Fenton-Ryan responded with objections to the interrogatories and motions for more definite statement. On November 16, the State filed a motion to compel. The defendants in turn, without complying with the request for discovery, filed motions for summary judgment with supporting affidavits. The State filed counter-affidavits and, pursuant to V.R.C.P. 56(f), it also filed an affidavit claiming that it could not fully respond to the motions for summary judgment because the court had not allowed it to conduct discovery. After hearing, the court granted summary judgment in favor of the defendants. The State appeals.

The Board is a nonprofit corporation whose members are licensed brokers and others engaged in the real estate profession. It maintains a multiple listing service (MLS) for the use of its members. As a condition of membership, all brokers must submit their sales listing agreements to the MLS. It then distributes them to the other members. If the listing broker sells the property, the entire commission or fee is paid to that broker. If a broker other than the listing broker sells the property, the commission is split between the two brokers.

The State's complaint alleged that during February, 1977, most members of the Board attended a meeting at which, by vote of the membership, the commission for sale of residential real estate was set at seven percent, and at which it

was also agreed that commissions between the listing and the selling broker would be split 50-50. Prior to 1977, the customary rate in Rutland County had been six percent and the split 60-40. It further alleged that the rate-setting agreement was an unfair method of competition, in violation of the Consumer Fraud Act, 9 V.S.A. § 2453(a), and that the defendants had participated in the agreement.

By affidavit filed in support of their motions for summary judgment, the defendants claim that they had no part in the alleged conspiracy. Heritage's affidavit shows that although it was represented at the meeting, its representative objected to the consideration of commission rates, and, when the matter was brought up for a vote, she refused to participate. The State's affidavit, however, claimed that no one objected to the vote, and, furthermore, that although Heritage had not listed any properties at seven percent during the preceding year, the first two properties it listed after the meeting were at seven percent. Fenton-Ryan's affidavit indicated that no one from its firm was present at the meeting, and that neither of its proprietors knew about the vote. The State's affidavits show, on the other hand, that although in 1976 no properties were listed at seven percent, by the next year 12 of 22 properties placed in the MLS bulletin were so listed.

The plaintiff contends that it should have been allowed to conduct discovery before the motion for summary judgment was ruled on and that, in any event, the order granting the motion was improper because its affidavits raised genuine issues of material fact.

■■■■ Although summary judgment is available in antitrust cases, it should be used sparingly. *Norfolk Monument Co.* v. *Woodlawn Memorial Gardens, Inc.*, 394 U.S. 700, 704 (1969) (per curiam). "[S]ummary judgment may be appropriate where the facts involved in a determinative issue of law are clear, undisputed or unrefuted," *Littlejohn* v. *Shell Oil Co.*, 483 F.2d 1140, 1145 (5th Cir.), *cert. denied,* 414 U.S. 1116 (1973), but, if there is a genuine issue as to any material fact, a trial is absolutely necessary. *Sykas* v. *Kearns,* 135 Vt. 610, 612, 383 A.2d 621, 623 (1978). The function of the court, at a Rule 56(c) hearing, is solely to determine whether such an issue exists. *Fonda* v. *Fay,* 131 Vt. 421, 422,

306 A.2d 97, 98 (1973). Prediscovery summary judgment involves an additional issue: Whether the party against whom summary judgment is sought is entitled to develop its case through discovery, before summary disposition against it. II P. Areeda & D. Turner, Antitrust Law ¶ 316e (1978).

In appropriate situations, plaintiffs in antitrust cases are entitled to such discovery. *Universal Brands, Inc.* v. *Philip Morris Inc.*, 546 F.2d 30, 36 (5th Cir. 1977). "A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited," however. *Aviation Specialties, Inc.* v. *United Technologies Corp.*, 568 F.2d 1186, 1190 (5th Cir. 1978). "[T]his entitlement lives only so long as there are factors which discovery might clear up, having some bearing on whether summary judgment should be entered." *Universal Brands, Inc.* v. *Philip Morris Inc.*, supra, 546 F.2d at 36. "When the record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of the case and that such discovery is not likely to produce a genuine issue of material fact, discovery should be ended." *Aviation Specialties, Inc.* v. *United Technologies Corp.*, supra, 568 F.2d at 1190.

■ The gravamen of the complaint here is that the defendants agreed to fix commission rates on the sale of residential real estate. An agreement among competitors to fix prices is unlawful per se. *United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940). Once the agreement is shown, a complete violation is proved.

■ Proof of a price-fixing conspiracy need not be direct. *United States* v. *Foley*, 598 F.2d 1323, 1328 (4th Cir. 1979). "While particularly true of price-fixing conspiracies, it is well recognized law that any conspiracy can ordinarily only be proved by inferences drawn from relevant and competent circumstantial evidence, including the conduct of the defendants charged." *Esco Corp.* v. *United States*, 340 F.2d 1000, 1007 (9th Cir. 1965). Parallel business behavior, although not itself illegal, is admissible circumstantial evidence from which the fact finder may infer agreement. *First National Bank* v. *Cities Service Co.*, 391 U.S. 253, 287–88 (1968);

*Theatre Enterprises, Inc.* v. *Paramount Film Distributing Corp.*, 346 U.S. 537, 540–41 (1954).

"[U]niformity of price may be and has been considered some evidence tending to establish an illegal agreement." *United States* v. *Chas. Pfizer & Co.*, 217 F. Supp. 199, 201 (S.D.N.Y. 1963). Price uniformity among competitors does not, of itself, violate the antitrust laws, however. *Theatre Enterprises, Inc.* v. *Paramount Film Distributing Corp., supra,* 346 U.S. at 540–41. If it is the result of independently reached pricing decisions, the element of "agreement" necessary to establish an illegal price-fixing combination or conspiracy is absent. But it does permit an inference that the defendant's conduct stemmed from an agreement, tacit or express, rather than from independent business decisions. See *id.* at 540.

By granting summary judgment, the trial court here ruled that, as a matter of law, the defendants had not participated in a price-fixing agreement. Furthermore, by not allowing discovery, it implicitly ruled that discovery would not produce a genuine issue of material fact. While the State's affidavits are deficient in this regard, the grant of summary judgment was nonetheless inappropriate because it was premature. The State should have been allowed to develop its case before summary disposition against it. The record before the trial court was not "clear enough to disclose that further discovery [was] not needed to develop significant aspects of the case." *Aviation Specialties, Inc.* v. *United Technologies Corp., supra,* 568 F.2d at 1190. On the contrary, the State's affidavits indicate that discovery may produce a genuine issue of material fact.

We do not say that the evidence of parallel pricing compels an inference in this case that the defendants participated in a price-fixing conspiracy, but neither can we say, as a matter of law, and especially without discovery, that an inference of no agreement is compelled. *Esco Corp.* v. *United States, supra,* 340 F.2d at 1007. Summary judgment is, under the circumstances, premature. The State should not be denied the

opportunity to assemble evidence from the defendants in support of its claim, if such evidence does, in fact, exist.

*Reversed and remanded for discovery.*