### Gerald B. Osler, d/b/a Heritage Associates v. Mitchell Landis

[415 A.2d 1316]

No. 18-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Connarn, District Judge, Specially Assigned

Opinion Filed May 13, 1980

Motion for Reargument Denied June 16, 1980

Kenneth V. Fisher, Jr., Brattleboro, for Plaintiff.

Evans, O'Neil & Meachem, Ltd., Manchester Center, for Defendant.

Hill, J. This is an appeal by defendant-seller from an order of the district court granting plaintiff-broker $3,300.00 plus interest as commission for plaintiff's efforts in procuring a ready, willing, and able buyer to purchase defendant's condominium. We affirm.

The convoluted negotiations that gave rise to the present action began with a letter dated January 16, 1978, from defendant-seller, acting as agent for his father, to plaintiff-broker. By that letter, the seller requested renewal of a nonexclusive listing agreement for Unit No. 19, Mount Snow Condominiums. The sale price was set at $35,000.00 furnished, $33,000.00 unfurnished, with an agreed sales commission of 10% of the sale price.

On or about January 23, 1978, plaintiff showed the property to one Mead Batchelder, Jr., at which time the prospective purchaser noticed a leak in the roof. Mr. Batchelder made an oral offer to purchase the property at $33,000.00 unfurnished, provided the roof was repaired. Plaintiff forwarded Batchelder's offer to the defendant, who instructed plaintiff to obtain

an estimate for the cost of repairing the roof. Following defendant's instructions, plaintiff contacted the company that had installed the original roof. Based on its knowledge of the roof and plaintiff's description of the leak, but without making an independent examination, the roofer estimated that it would cost between $800.00 and $1,000.00 to replace the entire roof, if that extensive a repair was necessary. As found by the trial court, this estimate was forwarded to the defendant by the plaintiff.

Defendant advised plaintiff that $1,000.00 was more than he was willing to spend, and refused to agree to the repairs. Nevertheless, defendant instructed plaintiff to obtain a deposit of earnest money from Batchelder. On February 3, 1978, Batchelder, on vacation in Florida, wired $500.00 to plaintiff as a deposit, together with a confirmation of the offer to purchase the premises for $33,000.00, less the cost of the roof repairs. Upon receipt of the earnest money, plaintiff contacted defendant, who asked whether he would be entitled to retain any of the deposit if Batchelder did not go through with the deal. Plaintiff advised defendant that the prospective purchaser would forfeit his deposit. During the course of the conversations between plaintiff and defendant, a further agreement was reached, whereby the broker agreed to bear one-half the cost of the roof repair and the defendant agreed to pay for the other one-half up to $500.00. Defendant then instructed the plaintiff to contact a competing real estate broker who also had a listing on the condominium, and inform him that defendant had taken a deposit on the premises, that a purchase and sale agreement was being drawn by plaintiff, and that the other broker should take the condominium off the market. When plaintiff called the competing broker to so inform him, he was told that the other broker had a prospective buyer who also was interested in purchasing the condominium.

On or about February 12, 1978, plaintiff prepared a purchase and sale agreement, which was signed by Batchelder. The proposed contract incorporated a provision containing the oral agreement between plaintiff and defendant regarding the roof repairs, as well as a provision making the deal contingent on obtaining "acceptable" financing. The proposed agreement was then sent to defendant. The next day plaintiff telephoned the defendant to inform him that the contract was in the mail. It apparently was during this telephone conversation that

defendant first indicated that he had received another offer on the premises—the latter offer not being conditional on roof repair or financing. Shortly after this conversation, plaintiff again called defendant and told him that he was willing to absorb the cost of the roof repair, which based on subsequent examination was now estimated at $350.00, and that Batchelder had the financial means to go through with the deal at that time. Defendant replied that he thought some form of competitive bidding was now in order since there were two prospective buyers. Batchelder balked at this suggestion, stating that the parties had already agreed on the price. The defendant rejected Batchelder's offer, and accepted the competing offer to purchase at $33,500.00. Plaintiff then brought this action to recover the commission allegedly owed to him under the terms of the listing agreement.

Under Vermont law, to be entitled to a commission, a broker must show that he procured a purchaser ready, willing, and able to purchase at the price and upon the terms prescribed by the seller. *Dindo* v. *Denton,* 130 Vt. 98, 106, 287 A.2d 546, 551 (1972); *Benoit* v. *Wing,* 117 Vt. 477, 478, 94 A.2d 237, 238 (1953); *Dindo* v. *Cappelletti,* 116 Vt. 403, 405, 77 A.2d 840, 841 (1951). Generally speaking, this involves not only a showing that the prospective purchaser had the financial ability to complete the contract, see *Ellsworth Dobbs, Inc.* v. *Johnson,* 50 N.J. 528, 544, 236 A.2d 843, 851 (1967), but also that the purchaser was ready and willing to purchase at the price and on the terms prescribed by the seller. If, however, the broker procures a purchaser who makes a counteroffer, as was the case here, he is entitled to a commission only if the seller has agreed to the terms of the counteroffer. Cf. *Oben* v. *Ducharme,* 93 Vt. 211, 217, 106 A. 777, 779 (1919) (seller at liberty to accept or reject counteroffer). Additionally, a broker must show that he was the "procuring cause." This customarily means that for a broker to be entitled to a commission a binding purchase and sale agreement must be entered into and a closing on the property completed. But if the contract is not completed due to the default of the seller, the broker is nonetheless entitled to his commission so long as he has produced the first purchaser who satisfies the other elements of this test. See *Pond* v. *Carter,* 126 Vt. 299, 303–04,

229 A.2d 248, 252 (1967); *Ellsworth Dobbs, Inc.* v. *Johnson, supra,* 50 N.J. at 551, 236 A.2d at 855.

The lower court found that plaintiff had proved each of these essential elements. Our review of the record leaves us convinced that the court's findings are well supported by credible evidence, and do not even remotely approach being clearly erroneous. See V.R.C.P. 52. The record amply demonstrates that the purchaser had access to a line of credit well above the amount necessary to purchase the condominium, and that extensive negotiations took place between plaintiff and defendant, the result of which was that defendant orally agreed to the terms embodied in the February 12 purchase and sale agreement. Furthermore, the record demonstrates that plaintiff produced, and the defendant wrongfully refused to deal with, the first purchaser ready, willing, and able to purchase. While the evidence as to each of these issues was in conflict, it is not for us to decide who or what to believe, but rather for the trier of fact to determine the credibility of the witnesses and the weight to be given to their testimony. *Cushing & Sons* v. *Labbe,* 137 Vt. 307, 308, 402 A.2d 1192, 1194 (1979).

*Judgment affirmed.*