Middlebury American Legion Post No. 27 v.
Floyd C. Peck and Beverly Peck

[432 A.2d 1183]

No. 348-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed June 2, 1981

*Susan F. Eaton* of *Langrock Sperry Parker & Stahl,* Middlebury, for Plaintiff.

*Tepper & Dardeck,* Rutland, for Defendants.

Underwood, J. Middlebury American Legion Post No. 27 (the Legion), the plaintiff below, on October 12, 1978, filed a complaint for a declaratory judgment. It alleged, in substance, that it owned a parcel of land in Middlebury abutting lands owned by Floyd C. and Beverly Peck (the Pecks), the defendants below. On April 27, 1978, a portion of its land was purportedly conveyed by warranty deed to the Pecks pursuant to alleged corporate authority granted to its commander, Paul Ringey, by a corporate resolution dated April 27, 1978.

The Legion further alleged in its complaint that the commander did not have the authority to convey its property to the Pecks; that the sale was not in conformity with either 27 V.S.A. § 702, or the bylaws of the Legion; and that it was without consideration.

For those reasons, the Legion contended that the deed to the Pecks was illegal and void. It therefore requested the trial court either (1) to declare the property to be the sole property of the Legion, and cancel the deed, or (2) to rescind the deed and declare the property to be the sole property of the Legion, or (3) to order the Pecks, pursuant to V.R.C.P. 70, to execute a quitclaim deed of the property to the Legion.

The Legion attached to its complaint, and incorporated by reference, a copy of the purported deed from the Legion to the Pecks, a copy of the purported corporate resolution authorizing the sale of the land to the Pecks and authorizing the commander to sign the deed, a copy of the Legion's bylaws, and a copy of an instrument entitled "notice of claim."

Although the docket entries attached to the printed case reflect that Floyd Peck filed a pro se appearance, answer and motion to dismiss, a copy of Peck's answer is not before us.

On July 30, 1980, the Legion filed a motion for summary judgment together with supporting affidavits, and on August 6, 1980, the Pecks, through their attorney, filed opposing affidavits.

The parties agreed to submit the case to the trial court on the Legion's motion for summary judgment, together with the supporting and opposing affidavits, and without a hearing. The court granted the Legion's motion for summary judgment on September 12, 1980, and on October 6, 1980, entered a judgment order decreeing title to the subject property to the Legion and divesting the Pecks of any title to or possession of the same. It is from this judgment order that the Pecks appeal.

The question presented is whether, based upon the pleadings and the supporting affidavits, the trial court correctly ruled that there was no genuine issue as to any material fact and that the Legion was therefore entitled to a judgment as a matter of law.

 A plaintiff seeking to obtain a declaratory judgment may, at any time after the expiration of twenty days from the commencement of the action, or after service of a motion for summary judgment by the defendant, move with or without supporting affidavits for a summary judgment in his favor. V.R.C.P. 56(a). The defendant, prior to the day of the hearing on the motion, may serve opposing affidavits on the plaintiff. V.R.C.P. 56(c). Judgment shall be rendered forthwith for the plaintiff if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law. *Id.*

 The procedure under V.R.C.P. 56 is not a trial of the underlying merits of the case on written affidavits. Rather, it resolves the question of whether the party opposed to the motion can demonstrate that he has evidence sufficient to create an issue at the time of trial. If he cannot,

and the moving party has shown that his position is supported by the evidence, then judgment should be entered without the time and expense of going to trial. See Reporter's Notes, V.R.C.P. 56(c); *Miller* v. *Merchants Bank*, 138 Vt. 235, 237, 415 A.2d 196, 198 (1980); *Sykas* v. *Kearns*, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978).

The moving party, in this case the Legion, has the burden of establishing that there exist no disputed issues. *Id.* at 612, 383 A.2d at 623. The Legion's complaint for declaratory judgment, not required to be verified, cannot be considered as an affidavit to support its motion for summary judgment. *Spargo* v. *Governor's Commission on the Administration of Justice*, 135 Vt. 333, 334, 376 A.2d 757, 758 (1977). The fact that the Legion's complaint may state a cause of action is not determinative of the issue before us on an appeal from the granting of a motion for summary judgment. The affidavits in support of and in opposition to the motion for summary judgment must control.

The burden on the Legion in connection with its motion is twofold: the supporting materials offered by it must be both formally and substantively sufficient to show the absence of a fact question, and summary judgment must be appropriate in the sense that the moving party is entitled to judgment as a matter of law. *Alpstetten Association, Inc.* v. *Kelly,* 137 Vt. 508, 514–15, 408 A.2d 644, 648 (1979).

The following facts are shown by the supporting materials to be uncontroverted. Floyd Peck, a long-standing member of the Legion, on February 20, 1978, contacted the executive committee to see if the Legion would sell him a strip of land, approximately 42 feet wide and 200 feet long ($\frac{1}{3}$ acre), which abutted his property. On March 27, 1978, the executive committee viewed the land in question and unanimously recommended the $1,000 sale to the membership of the Legion if the Pecks paid all transfer and legal fees and upon the further condition that the Bank give a partial release of its mortgage. The executive committee noted that the Legion never used this strip of land and that the Pecks had maintained it for the past seven years.

The only notice given to the membership of the Legion that a vote would be taken at its regular monthly meeting

to see if it would approve the sale as recommended appeared in the American Legion and Auxillary News Letter mailed to the members under the signature of Paul Ringey, commander. In the closing paragraph appeared the following: "I am late in getting this to the printer so will just remind you of a few dates; APRIL 24 POST MEETING with $$$ involved. POT LUCK supper at 7 P.M. meeting at 8:00 P.M. . . ."

The minutes of the April 24 regular monthly meeting reflect that the recommendation of the executive committee was moved, seconded and passed by a majority vote of the members present. Nothing further on the subject is recorded. A corporate resolution dated April 27, 1978, certified by Paul Ringey, commander, reaffirmed that the sale to the Pecks was unanimously adopted, adding: "That Paul Ringey, Commander of the Middlebury American Legion Post 27, was empowered to execute all documents necessary for the sale of said property mentioned above."

Paul Ringey, in his capacity as commander, did in fact execute a warranty deed to the property in question to the Pecks on April 27, 1978. The Chittenden Trust Company did execute a partial release of its mortgage on this parcel. The Pecks tendered a check payable to the order of the Legion for $1,000 and recorded the deed.

The only question is whether Paul Ringey, as commander, had authority from the membership to execute the deed to the Pecks. Joseph DeGray, by his affidavit, stated that he had moved, at the close of the regular meeting on April 24, that the executive committee be authorized to sign the necessary papers, and that his motion had been seconded and passed. He further claims that his motion was inadvertently left out of the record. At the next regular monthly meeting on May 22, however, he moved to have the minutes of the April 24 meeting corrected and, it being so voted, the error was corrected. The adjutant, whose duty it is to keep the minutes, noted the correction on the record at that time.

Floyd Peck, who was also present at the April 24 meeting, recalls in his opposing affidavit, that after the vote of the membership approving the sale, one of the members suggested that commander Ringey "should take care of the nec-

essary paper work. Several other Legion members responded 'Yea'."

Ringey, by his affidavit, stated that although he had no specific recollection of a membership vote authorizing him to sign the deed, it was his belief there was such a vote, and that he would not have signed the corporate resolution and warranty deed unless he knew and understood that he was authorized by the membership to do so. He further stated that during his service as commander from 1977–79 it was the usual course of business for the Legion to appoint him as agent to carry out actions approved by the membership.

27 V.S.A. § 346 provides: "A public or private corporation authorized to hold real estate may convey the same by an agent appointed by vote for that purpose."

The bylaws of the Legion are silent as to who is empowered as an agent to convey the corporation's real estate, and they contain no specific notice provision as to business to be conducted at regular monthly meetings of the membership.

It is obvious that there is a dispute as to a material fact. Did Paul Ringey, as commander, have express or apparent authority to execute the deed of the land in question to the Pecks? This issue should not have been adjudicated by the trial court on the Legion's motion for summary judgment. *State* v. *Heritage Realty*, 137 Vt. 425, 428, 407 A.2d 509, 511 (1979). Summary judgment was improvidently granted.

*Reversed and remanded.*