**Arjay Properties, Inc., d/b/a Walker Realty v. Jane G. Hicks**

[465 A.2d 777]

No. 82-257

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and
Larrow, J. (Ret.), Specially Assigned

Opinion Filed September 6, 1983

*O'Neil & Chamberlain, P.C.*, Manchester Center, for Plaintiff-Appellant.

*Joseph J. O'Dea* of *Arthur J. O'Dea, P.C.*, Manchester, for Defendant-Appellee.

**Billings, C.J.** Plaintiff, a real estate brokerage firm, appeals from an order of the Bennington Superior Court denying its claim to a real estate commission. Plaintiff claims that it produced ready, willing and able buyers to purchase defendant's home, and that only defendant's wrongful conduct prevented the sale from being consummated. As such, plaintiff argues, the trial court wrongly dismissed its complaint.

After hearing, the trial court found the following facts, which have not been challenged on appeal. In October of 1979, plaintiff and defendant entered into a nonexclusive listing agreement for the sale of defendant's house and two acres of land in Arlington, Vermont. The agreement provided that defendant would pay plaintiff a seven percent commission if defendant's property were sold, through plaintiff's efforts, for $79,500 "or any other price or terms acceptable to [defendant]." The agreement further provided the following: "The Broker Named Herein Shall Not Claim A Commission If Subject Property Is Sold By The Owner (Seller), To Anyone Not Secured By The Said Broker," and "COMMISSION PAYABLE TO FIRST BROKER CONSUMMATING SALE."

On July 7, 1980, plaintiff's employee [the broker], obtained an offer of $70,000 for the property from Joseph and Joan Eigo [the purchasers], of New York. The broker telephoned this offer to defendant the next day. Defendant rejected the offer, but in the same conversation made a counteroffer to sell the property for $75,000. The broker relayed this counteroffer to the purchasers who, on July 9, telephoned the broker that they would buy the property for $75,000, on the following terms: $25,000 down; a $50,000 mortgage; a September 15, 1980, closing; $500 earnest money; and a $7,000 deposit upon the signing of the purchase and sale agreement. In addition, the closing was to be contingent upon the purchasers securing a mortgage loan.

On the same day, July 9, the broker telephoned defendant and communicated the purchasers' terms to her. Defendant orally agreed to the purchasers' terms, and the next day the broker mailed a proposed purchase and sale agreement to the purchasers with instructions that they sign it and forward it

to defendant. On July 12 the broker received the purchasers' $500 earnest money check, and on July 15 the broker called defendant to tell her that the signed purchase and sale agreement would arrive at defendant's home in about a week. Defendant seemed "pleased" at this news. On July 16, the purchasers called the broker and said they wanted to look over the Arlington premises one more time before delivering the signed purchase and sale agreement. Two days later the purchasers met with the broker, inspected the premises and gave her the signed agreement, which she immediately forwarded to defendant.

In the meantime, however, a wholly different real estate brokerage firm, who also had a nonexclusive listing agreement with defendant, produced a signed purchase and sale agreement from its own purchaser offering $79,500 for the premises. On July 18 defendant picked up this agreement at a bus station, and on July 19 she signed it, without notifying plaintiff's broker or purchasers of these transactions. Two days later, on July 22, defendant received by mail the purchase and sale agreement executed by plaintiff's purchasers. Defendant neither opened the letter nor contacted plaintiff's broker or their purchasers; instead she gave the agreement to her New York attorney, who mailed the unopened agreement back to the broker the following day, with a cover letter indicating that defendant was rescinding her prior oral agreement and selling the property to other purchasers. The premises were sold to the other purchasers on September 24, 1980.

Plaintiff sued defendant for its seven percent real estate commission, seeking $5,250. After trial, the court dismissed plaintiff's claim and granted defendant her costs, concluding that under the listing agreement the commission was payable only to the first broker "consummating [the] sale." The court interpreted this to mean that the right to a commission was contingent upon delivering the first purchase and sale agreement to the seller on terms acceptable to her. As the purchase and sale agreement procured by plaintiff was not delivered until after defendant had received the second agreement, the court held that defendant was not in default and that plaintiff was not entitled to its commission

In order to recover a commission, a broker must have a written listing agreement " 'containing all the ingredi-

ents expressly mandated by law under the statute.' " *Currier* v. *Letourneau,* 135 Vt. 196, 200, 373 A.2d 521, 525 (1977) (quoting *Green Mountain Realty, Inc.* v. *Fish,* 133 Vt. 296, 299, 336 A.2d 187, 189 (1975)). In addition, the broker must show that she procured a purchaser ready, willing and able. *Osler* v. *Landis,* 138 Vt. 353, 356, 415 A.2d 1316, 1318 (1980). This involves not only a showing that the prospective purchaser had the financial ability to complete the contract, but also that the purchaser was ready and willing to purchase at the price and on the terms prescribed by the seller. *Id.* Finally, the broker must show that she was the "procuring cause" of the sale, which usually requires that a binding purchase and sale agreement be entered into and a closing on the property completed. *Id.*

■ However, where the contract is not completed and the sale is not consummated due to the seller's wrongful conduct or default, the broker is nonetheless entitled to her commission so long as she has produced the first purchaser who satisfies the other elements of this test. *Id.* at 356, 415 A.2d at 1318.

> "The weight of authority is to the effect that where a broker in good faith and in reliance upon his contract procures a purchaser ready, able and willing to buy the property in accordance with the terms fixed by the seller, and before the broker can effect the sale or procure a binding contract of purchase the seller defeats the transaction, not for any fault of the broker or purchaser but solely because the seller will not or cannot complete the transaction, then and in such case the broker is entitled to his commission, if the customer remains ready, able and willing to purchase, although the sale has not been fully completed; the strict terms of the contract between principal and broker as to completing the sale or procuring a binding contract of purchase from the customer being deemed waived by the principal."

*Pond* v. *Carter,* 126 Vt. 299, 305, 229 A.2d 248, 253 (1967) (quoting *Knowles* v. *Henderson,* 156 Fla. 31, 34, 22 So. 2d 384, 385–86 (1945)) (citations omitted).

■ Here, defendant orally accepted the terms offered by plaintiff's purchasers, purported to be awaiting their signed purchase and sale agreement, and then silently signed a subse-

quent agreement offering a higher purchase price. Thus, defendant not only failed to notify plaintiff that she had found another purchaser, but she never rescinded her oral acceptance of July 9. Therefore, it is apparent from these facts that plaintiff's broker produced the first purchaser who satisfied the other elements of the test cited above, *Osler* v. *Landis, supra,* 138 Vt. at 356, 415 A.2d at 1318, and that "[t]he bargain fell through by defendant's fault or inability to complete it and not because of any fault or failure of the plaintiff." *Pond* v. *Carter, supra,* 126 Vt. at 305, 229 A.2d at 252. The fact that the purchaser was ready, able and willing to buy, and would have done so had defendant not accepted a subsequent offer, must be regarded as "controlling, and as dispensing with, and as a waiver of, the necessity of a binding sales contract, which might otherwise exist." *Id.* at 305, 229 A.2d at 253.

For these reasons we cannot agree with the trial court that defendant was not in default, and the resulting judgment cannot stand.

*Reversed, judgment for defendant vacated; cause remanded for the entry of judgment for plaintiff in the amount of $5,250 plus interest and costs.*