**James David GILMER v. Norman FAUTEUX and Land East Construction Company**

[723 A.2d 1150]

No. 97-323

December 22, 1998. Defendants appeal the superior court's decision awarding plaintiff James Gilmer a real estate commission. We reverse based on our determination that the record does not support the court's conclusion that plaintiff procured the sale of the subject property.

Defendant Norman Fauteux was designated in a 1991 divorce decree as the agent responsible for liquidating the divorcing couple's marital property, including properties owned by defendant Land East Construction Corporation (Land East). Fauteux sold eighteen properties without the services of a broker, but eventually hired plaintiff to help him sell the remaining properties. Between 1992 and 1995, Gilmer received commission payments for selling approximately fifteen parcels.

In September 1992, Fauteux and Gilmer entered into a nonexclusive one-year listing agreement concerning the subject property, known as the North Hartland Dry Kiln, which was owned by Land East. Fauteux agreed to pay Gilmer

a commission if Gilmer procured a buyer for the property, which was listed at $1,000,000. As soon as the agreement was signed, Gilmer contacted the Cersosimo Lumber Company (Cersosimo) regarding the property, but the company expressed no interest in purchasing it. In September 1993, Fauteux and Gilmer signed a renewal one-year listing agreement concerning the property. By September 1994, the property had not sold, and Gilmer asked Fauteux to renew the listing agreement once again. Fauteux told Gilmer that he was reluctant to sign a renewal agreement because he was not sure whether his authority as liquidating agent would extend beyond December 1994. Nevertheless, Fauteux asked Gilmer to continue to seek a buyer for the property, assuring him that he would be paid a commission. Gilmer agreed to continue looking for a buyer with the understanding that Fauteux would sign a new listing agreement if he were reappointed as liquidating agent.

In January 1995, Gilmer notified Cersosimo that the asking price for the subject property had been reduced from $1,000,000 to $750,000. Soon thereafter, Gilmer began negotiating a deal with one prospective buyer and then with another when the first one withdrew its offer. On May 22, 1995, after Gilmer gave Fauteux the latest draft of a purchase and sale agreement negotiated with the second prospective buyer, Fauteux told Gilmer that he expected to be reappointed as liquidating agent. That same day, Gilmer gave Fauteux a renewal listing agreement with the understanding that he would sign it. Fauteux never signed the agreement and, in September 1995, sold the subject property to Cersosimo. When Fauteux refused to give Gilmer a commission, Gilmer sued Fauteux and Land East, seeking a broker's fee for the sale of the property.

Following a hearing, the superior court determined that Gilmer had procured the sale of the kiln, and thus was entitled to a commission in the amount of $58,750. The court acknowledged the general rule barring real estate commissions absent an executed written listing agreement, but concluded that an exception should apply in this case because the parties had expressed a mutual intent to abide by a written listing agreement that, though unsigned, contained the same terms as those contained in their prior agreements. Given the clear terms of the parties' agreement, the court found no reason to invoke the rule requiring an executed written agreement, which is aimed at ensuring that the parties are fully aware of the terms of the agreement. See *MacDonald v. Roderick*, 158 Vt. 1, 7, 603 A.2d 369, 373 (1992) (when listing agreement is oral, recovery of real estate commission will always be barred because the requirement of written agreement ensures that parties are fully aware of terms of agreement). On appeal, defendants argue that the superior court erred in allowing a commission without an executed written listing agreement and in concluding that Gilmer procured the sale to Cersosimo.

Because the record does not support the trial court's conclusion that Gilmer procured the sale of the subject property, we need not consider whether the absence of an executed written listing agreement in these circumstances precluded Gilmer from recovering a broker's fee. Merely listing a property with one broker does not preclude sale of the property through the efforts of the owner or another broker. See *Kelly v. Beaudoin*, 131 Vt. 27, 32-33, 298 A.2d 831, 834 (1973). Because the prior listing agreements between the parties in this case were non-exclusive, Gilmer would be entitled to a commission only if he was the procuring cause of the transaction. See *id.* at 33, 298 A.2d at 835; see also *Osler v. Landis*, 138 Vt. 353, 356, 415 A.2d 1316, 1318 (1980) ("Under Vermont law, to be entitled to a

commission, a broker must show that he procured a purchaser ready, willing, and able to purchase at the price and upon the terms prescribed by the seller."). To demonstrate that he procured the sale, Gilmer "must show more than incidental relationship to the resulting sale." *Ellis-Gould Corp. v. Kelly*, 134 Vt. 255, 257, 356 A.2d 497, 498 (1976). Indeed, as plaintiff, it was his burden at trial "to show that his efforts dominated the transaction." *Bryant v. Strong*, 141 Vt. 244, 247, 448 A.2d 142, 144 (1982).

Gilmer failed to meet this burden. The record reveals that the only contact between Gilmer and Cersosimo over a four-year period consisted of four telephone calls initiated by Gilmer. Gilmer telephoned someone at Cersosimo in 1992 to inform the company that the subject property was on the market, but the company did not express an interest in the property at that time. In October 1994, after resolution of some environmental issues concerning the property, Gilmer telephoned Cersosimo on two occasions, leaving a message the first time, and later engaging a Cersosimo employee in a one-minute conversation. Gilmer called Cersosimo a final time in January 1995, apparently to inform the company that the asking price for the subject property had been reduced from $1,000,000 to $750,000. In the first half of 1995, before Fauteux sold the property to Cersosimo, Gilmer was actively involved in negotiations with two other buyers. The superior court acknowledged Cersosimo's lack of responsiveness to Gilmer's limited telephone contacts, but concluded that Gilmer was entitled to a commission because he had maintained periodic contact with the company while cultivating other buyers, whose interest in the property ultimately sparked Cersosimo's interest. We conclude that the collateral results of Gilmer's efforts with other potential buyers, even in conjunction with the telephone calls he made to Cersosimo, do not support the conclusion that his efforts dominated the transaction involving the sale of the subject property to Cersosimo. Indeed, the superior court found that Cersosimo had been following his competitors' interest in the property through his contacts in the industry, not through Gilmer. Even assuming that Gilmer first interested Cersosimo in the property, that fact is not enough to demonstrate that he procured the sale. See *Walbridge Agency, Inc. v. Rutland Hosp.*, 123 Vt. 149, 154, 186 A.2d 179, 183 (1962) ("Although the broker's efforts need not be the sole cause of the sale, it is essential that they dominate the transaction and amount to something more than an incidental or contributing influence.").

The superior court felt that, by contacting Fauteux through an agent naming him as an undisclosed principal, Cersosimo had intended an end run around Gilmer. Citing *Ellis-Gould*, 134 Vt. at 256, 356 A.2d at 498, the court stated that it was "left with the impression" that Fauteux and Cersosimo acted as two professionals attempting to evade payment of Gilmer's commission. This conclusion is inconsistent with the court's stated assumption that Fauteux would have referred the agent of the undisclosed principal to Gilmer had he known that the principal was Cersosimo. Further, the court's speculation is unsupported by the evidence, which does not demonstrate a bad faith motive on the part of Fauteux and Cersosimo to avoid Gilmer's commission. Cf. *Beaudoin*, 131 Vt. at 33, 298 A.2d at 835 (record contains no evidence of bad faith, and presumption is against it). The instant case is a far cry from *Ellis-Gould*, where the purchaser consummated the transaction directly with the seller after engaging in extensive negotiations exclusively with the seller's broker. In any case, the fact remains that neither the evidence nor the court's findings support its conclusion that Gilmer procured the sale of the subject property.

Cf. *id.* at 258, 356 A.2d at 499 (broker who procures transaction is entitled to commission even if transaction is consummated directly by principal; presence or absence of bad faith becomes material when consummation of transaction is prevented by acts of principal).

*Reversed.*