**FOSTER and GRIDLEY, d/b/a Remax Champlain Valley Properties and MCM Group, Inc. v. Irene H. WINNER**

[740 A.2d 1283]

No. 98-489

August 2, 1999. Defendant Irene Winner appeals adverse summary judgment decisions in a suit by plaintiff brokers to recover real estate commissions. Defendant contends the Addison Superior Court erred in: (1) granting plaintiff MCM Group, Inc.'s (Century 21) motion for summary judgment on Century 21's claim for breach of contract and attorney's fees and, (2) granting both Century 21 and Foster and Gridley Inc.'s (Remax) motion for summary judgment on defendant's fiduciary breach and tortious interference counterclaims. We affirm.

This matter arises out of a 1997 real estate transaction. In September 1996, defendant entered into an "Exclusive Right to Market Property" agreement (listing agreement) with Century 21. The listing agreement concerned real property in Cornwall and provided that Century 21 was to receive the exclusive right to act as defendant's real estate agent for

the listing, marketing and sale of the property for a one year term. The listing price for the property was $250,000, and Century 21's commission under the agreement was six percent if, during the term of the agreement, "the Property is sold or Owner enters into an agreement for the sale of the Property and all closing contingencies to be performed by purchaser under such agreement are satisfied in accordance with the terms thereof." In February 1997, Brian and Theresa Marohnic (the buyers), through their agent Remax, offered to purchase the Cornwall property for $255,000, $5,000 above the asking price. Defendant accepted the offer and on March 1, 1997, entered into a purchase and sale contract with the buyers. The contract included an addendum indicating that the transaction was to be financed by the seller and was "subject to a seller's credit check of the buyer."

In March and April 1997, in response to defendant's request for credit information, Remax provided defendant with buyers' 1994, 1995 and 1996 federal income tax returns, a statement of the buyers' available cash, and a statement of the buyers' income, expenses and assets. Another addendum was executed by defendant on April 29 to confirm that the purchase and sale agreement included a commercial property, as well as a residential property. The buyers executed the addendum on May 9, the day of the closing. Although the sale closed, defendant did not pay a commission to Century 21.

Century 21 and Remax brought suit against defendant for breach of contract and quantum meruit. Defendant counterclaimed against both plaintiffs for breach of fiduciary duty and tortious interference with a contract. Thereafter, Century 21 and Remax filed motions for summary judgment on their breach of contract claims and on defendant's counterclaims. Defendant filed a motion to dismiss

Remax's complaint and a motion for summary judgment of Remax's claim for attorney's fees. Defendant appeals the summary judgment decisions decided against her. She does not appeal the denial of her motion to dismiss Remax's claim for quantum meruit, and we do not address it.

*Century 21's motion for summary judgment*

We examine first defendant's appeal of the court's decision granting Century 21 summary judgment on its claim for breach of contract and attorney's fees and on defendant's counterclaims. Defendant argues that Century 21 is not entitled to the commission because the sale was not consummated on the terms in the original purchase and sale agreement, but rather, required the intervention of her son and her attorney to ensure the inclusion of two addenda to address alternative financing arrangements and the sale of the commercial property. Defendant contends Century 21 failed to effectively structure the purchase and sale agreement and to inform defendant of critical financial information.

Summary judgment should be granted where, giving the nonmoving party the benefit of all reasonable doubts and inferences, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See, e.g., *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 55, 644 A.2d 316, 318 (1994). Here, two critical facts are undisputed. First, in September 1996, defendant entered into the listing agreement with Century 21. The listing agreement provided that Century 21 would have the exclusive right to market defendant's property for one year and if the property sold due to Century 21's efforts, it would receive a six percent commission. Second, on May 9, 1997, the property sold. Defendant argues, however, that the fact the property sold does not, as a matter of law, establish that Century 21 procured the

sale. To be deemed the procuring cause of a real estate transaction, there must be a binding purchase and sale agreement between buyer and seller and the broker must "'dominate the transaction and amount to something more than an incidental or contributing influence.'" *Kelly v. Beaudoin*, 131 Vt. 27, 32, 298 A.2d 831, 834 (1972) (quoting *Walbridge Agency, Inc. v. Rutland Hosp.*, 123 Vt. 149, 154-55, 186 A.2d 179, 183 (1962)).

The purchase and sale agreement on which defendant and the buyers closed states that "[s]eller and purchaser agree that [Century 21] as listed agency of Seller and Remax . . . brought about this sale" and defendant's statement of disputed facts fails to generate any genuine issue on that point. That defendant's son consulted with defendant's lawyer to prepare·'addenda addressing financing and the inclusion of the commercial property does not diminish the fact that Century 21 was defendant's exclusive sales agent and that, through its representation, buyers and defendant came together to negotiate on the sale and purchase of defendant's property.

Moreover, despite defendant's awareness of the buyers' financial status prior to the closing, defendant agreed to make alternative financing arrangements so that the transaction could occur. Defendant's participation in and agreement to arranging alternative financing does not generate an issue of material fact on the question of Century 21's responsibility for procuring a ready, willing and able buyer to purchase the property. Although defendant's willingness to finance the sale clearly sustained negotiations between defendant and buyers, that flexibility in structuring the transaction was not the procuring cause of the sale. Century 21 brought to defendant a buyer who, when the standard bank financing was no longer an option, was ready, able and willing to arrange financing with defendant in order to consummate the transac-

tion. Defendant could have terminated her dealings with the buyers at any point prior to the closing but did not. The uncontroverted evidence indicates that Century 21 was the procuring cause of the transaction and that, in refusing to pay Century 21 a six percent commission, defendant breached the listing agreement contract. See *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 557, 508 A.2d 689, 692 (1986) (when uncontroverted evidence leads to one conclusion, typically factual issues become questions of law).

Nor do defendant's counterclaims survive Century 21's motion for summary judgment. Defendant alleged Century 21 breached its fiduciary duty by failing to disclose to defendant that the buyers had been denied financing and by failing to ensure a closing on the commercial property as well as the residence. A broker's obligations as a fiduciary include the duty to "disclose all matters that are material to, and might affect, the principal's actions." *Quechee Lakes Rental Corp. v. Boggess*, 158 Vt. 258, 262, 608 A.2d 39, 41 (1992).

Defendant's allegation that Century 21 knew of the buyers' financing problems but did not reveal this information to defendant is unsupported by any specific factual allegations whatsoever. Defendant provides no citations or record references to the buyers' alleged rejected financing application, or the date on which Century 21 allegedly became aware of the information and when it communicated this information to defendant. Even assuming arguendo that Century 21 had a duty to investigate buyers' credit worthiness, defendant fails to generate a genuine issue of fact. See *Kelly v. Town of Barnard*, 155 Vt. 296, 299, 583 A.2d 614, 616 (1990) (trial court may enter summary judgment against adverse party that fails to respond to proponent's memorandum and affidavits with specific facts showing existence of genuine issue for trial).

Nor does defendant support her argument that Century 21 breached its fidu-

ciary duty by failing to ensure that the commercial property closed with any factual or record references. Again, defendant's unsupported argument does not suffice to raise a genuine issue of material fact. See Reporter's Notes to 1995 Amendment, V.R.C.P. 56 ("The rule [56(c)] seeks to change the present practice under which generalized claims as to whether material facts may be in dispute are frequently presented on motions for summary judgment."). Indeed, the only fact before us on that issue is that the entire property, including the commercial property, closed on May 9. Thus, defendant has failed to put forth any genuine issues on her breach of fiduciary duty counterclaim. See *Middlebury American Legion Post No. 27 v. Peck*, 139 Vt. 628, 432 A.2d 1183 (1981) (if party opposing summary judgment cannot demonstrate evidence sufficient to create an issue at trial, and moving party has shown that his position is supported by evidence, judgment should be entered for movant).

Defendant also argues that Century 21 breached its fiduciary duty by placing a lien on the property and subsequently filing an ex parte attachment and trustee action once it became apparent that defendant did not intend to pay the commission. She argues that in *Boggess* we characterized the fiduciary relationship between broker and client as extending through to the end of the real estate closing. See *Boggess*, 158 Vt. at 264, 608 A.2d at 42. Apparently, the parties have dismissed the attachment by agreement. In any event, Century 21's agency terminated once the property sold; the duty of loyalty does not survive termination of an agent's employment. See *id.*; Restatement (Second) of Agency § 396 (1958).

Defendant also counterclaimed that Century 21 tortiously interfered with the contractual relationship between defendant and the buyers. She argues that, although a contract was performed, it did not contain the terms she originally

agreed to. Because of Century 21's interference with the fulfillment of the original purchase and sale agreement, defendant argues she was compelled to agree to terms disagreeable to her.

One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the other person not to perform is liable to the other for losses resulting from the failure of the third person to perform. See *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80, 484 A.2d 911, 913-14 (1984) (citing Restatement (Second) of Torts § 766 (1979)). The tort requires that a plaintiff suffer harm as a result of a third person's failure to perform his or her contractual obligations with the plaintiff and that a defendant intentionally and improperly induce the third person not to perform under the contract. See *Gifford v. Sun Data, Inc.*, 165 Vt. 611, 612, 686 A.2d 472, 473 (1996). Defendant's argument that the buyers' alleged failure to meet her original financing requirements amounts to a failure to perform does not withstand the fact that defendant closed on the property and the sale was completed.

In light of our decision affirming the trial court's grant of Century 21's motion for summary judgment, we also conclude that Century 21 is entitled to attorney's fees. An award of attorney's fees[3] is proper where a contract makes such provisions. See *Albright v. Fish*, 138 Vt. 585, 590-91, 422 A.2d 250, 254 (1980). Here, the listing agreement provided that "in the event of any litigation or lawsuit between owner and listing agency arising out of, or relating to, this Agreement, the prevailing party will be entitled to the costs and expenses thereof, including reasonable attorney's fees." Accordingly, Century 21, as the prevailing party, is entitled to attorney's fees.

*Remax's motion for summary judgment*

Remax moved for summary judgment on its breach of contract claim as well as

on defendant's counterclaims for breach of fiduciary duty and tortious interference of contract. The court denied Remax's motion on the breach of contract claim and granted, sua sponte, summary judgment on the claim in favor of defendant. Remax acknowledges the court's decision on the breach of contract claim, but does not bring a cross-appeal on that decision. Accordingly, we do not address that portion of the court's decision. The court's grant of summary judgment in favor of Remax on defendant's fiduciary duty and tortious interference counterclaims is, however, before us.

Remax was the buyers' broker and owed a fiduciary duty to the buyers, not to defendant. Indeed, Vermont Real Estate Commission Rule 4.12(d) provides: "The brokerage firm representing a seller may compensate a brokerage firm representing a buyer out of the transaction fee without thereby creating an agency relationship." Defendant has presented no evidence that Remax owed a fiduciary duty to defendant. Summary judgment was therefore appropriately granted to Remax on defendant's counterclaim concerning breach of fiduciary duty.

Nor does defendant's tortious interference counterclaim survive Remax's motion for summary judgment. As the trial court noted, defendant's suggestion that Remax encouraged the buyers to sell their own property and begin plans to move from California in spite of the rejected financing application is unsupported by any record reference or citation. Defendant essentially argues that Remax brought her a buyer who did not meet her financial requirements. By closing on the sale, however, defendant waived those requirements. To establish liability for this tort, defendant must show that Remax intentionally and improperly induced the buyers not to perform the contract. See *Gifford*, 165 Vt. at 612, 686 A.2d at 473. In fact, Remax did just the opposite: it produced ready and willing buyers who, together with defendant, closed on the sale of the subject real estate. The contract was performed with defendant's approval. We therefore hold that defendant has presented no genuine issue of material fact on her tortious interference counterclaim against Remax and judgment was properly granted as a matter of law.

*Affirmed.*